Our next case is number 15-1531, Stephanie C. v. Blue Cross Blue Shield of Massachusetts. May it please the Court, if I could reserve three minutes for rebuttal. Yes, Mr. King, you may have that. Thank you. Brian King for the appellants, Stephanie C. and Miles G. This is a case that involves issues initially involving with the standard of review. It's our position that the subscriber certificate, which is the controlling document that governs the plan in this case, does not confer discretionary authority on Blue Cross. There's no question it confers authority, but that's different than discretionary authority, and that's something that Gross teaches very clearly from this circuit a couple of years ago. This Court also has indicated that the need for clear notice pervades the ERISA regulatory structure. That's a quote from the Bard case. And for that reason, this PAA, the Premium Account Agreement, should not have been considered, as it was by the trial court, in evaluating whether discretionary authority exists. That notice issue is critical. Well, why shouldn't the PAA have been considered? Isn't it one of the plan documents? It is a plan document, Your Honor. And plan documents are available to plan participants on request. That's by statute and regulation. That's correct. However, Your Honor, this is a document, the PAA, that does not create or establish or give notice of any rights and obligations between the plan and the participants and beneficiaries. It's a document that is between the plan, or in this case, the sponsor of the plan, the employer, and Blue Cross. It's not designed to give notice to, or from the perspective of the participants or beneficiaries, create any rights or obligations whatsoever. But the fact is, it does give that notice. Had the participant asked for the document, she would have been on clear notice. The language is unmistakable. That's correct, Your Honor. But she has no obligation to ask for those documents. No, she has no obligation. But I always thought that the test was whether the standard was clearly reserved in documents, in plan documents, either given to or made available to the participant. Well, the notice requirements of ERISA, Your Honor, talks about the need for disclosure of the terms that establish circumstances that can result in disqualification or denial of benefits being found in the plan document and, more importantly, being contained in a summary plan description that is then distributed to the participants and beneficiaries. In other words, Your Honor, it's not enough for the plan to say, well, we've got these documents. They're hidden. We don't distribute them. But if you ask for them, you'll see what obligations and rights are created in that hinder you as participants and beneficiaries or at least affect, if not hinder, your ability to get these plan benefits that you're seeking. So you have to take into account the notice and disclosure framework of ERISA, Your Honor. We tried to outline that. It's 29 U.S.C. Section 1021 and Section 1022, Section 1024 of the U.S. Code. That's very clear. In other words, you shouldn't have to seek these documents out if they're hidden from you. As a practical matter, the way it's supposed to work, isn't it, is that all plan participants are supposed to get a summary plan description. They're not supposed to contain certain language. Yes. Some plan participants, those who have claims or those who are really ERISA scholars, will ask for the plan. Virtually nobody ever asks for the ancillary agreements that the plan enters into with vendors. That's true, Your Honor. That's true. And this is a document that is pertaining only to the internal relationship between the employer and Blue Cross in this case. So it's just not a document. It is a plan document. It's a document under which the plan is established and operated. There's no doubt about it. And as you say, Judge Salia, you can get that document if you ask for it. But it's not a document that fairly puts people on notice.  We dealt in our reply brief with the issue about whether this needs to be submitted as a case-stated matter. Unless the court has questions, I won't spend time on that. I think we've spent some briefing on that that makes our position clear on that. No, but I have another question. I think you argued to the district court that if it was de novo review, then your client necessarily won discussing the facts. I'm not quite sure what you argued to the district court. Yes. But you did not argue to us that if de novo review applies, then necessarily on the facts of the case, on summary judgment, that you would win. What we argued, Judge Lynch, is that because the district court went on and made the erroneous ruling from our perspective on the standard overview and then made some additional errors in how the trial court came to the conclusion that there had been a full and fair review, that there had been no violation of ERISA's claims procedure regulations. So we do believe, and it is our position, that should you reverse on the standard of review, you ought to reach these other additional errors that the district court made in terms of its consideration of whether a full and fair review occurred in this case. Particularly, Your Honor. And Judge Lynch, you're the one who offered the two primary decisions that I believe exist at the First Circuit level that deal with this whole question about what constitutes a full and fair review. Namely, the Glista case and the Bard case. Those two cases make very clear that under the circumstances of this matter, there simply was not a meaningful dialogue that took place. The first denial letter that was sent from Blue Cross was very conclusory in just saying, you don't meet our medical criteria. Now, in response to that, Stephanie put together a significant, extensive appeal letter that went through all the areas she, on her own, found, got the criteria that applied. And she went through and said, here's how we meet the criteria. And she asked in that letter, if you don't feel that we meet the criteria, please tell me how and why we don't meet the criteria. And in response to that, you got from Blue Cross, she got from Blue Cross, a letter back that said almost exactly what the first letter said, which was a template or a form letter saying, you don't meet our criteria. Are you saying we need to look at this if we agree with you that this was not a reservation of discretionary review? I think what you need to do, Your Honor, is if it's a de novo standard of review, in your opinion, and the case is reversed and sent back, there needs to be some instruction to the trial court about how, if at all, of course, we believe that there were some errors made in the trial court's analysis of whether a full and fair review had taken place, whether there was meaningful dialogue that occurred. And I do think that this court needs to address those issues that were briefed. Wouldn't it just be de novo review of whether she was entitled to the benefits with no deference given to the claims-paying fiduciary? And so I'm not understanding why we need to examine them. Thank you, Your Honor. The trial court would have to be cabined by the administrative appeal record and would have to review whether, on the contents of the administrative appeal record, there was a full and fair review that took place. And we think that there were some significant errors that this court needs to address and correct by the trial court. Or we're going to have those same errors take place again, even under a de novo standard of review. So are you saying that if the trial court, if we found de novo review applies and remand, that the trial court could find in theory that, okay, there was a full and fair review, so I'm deferring to the decision? No. Wouldn't it just skip over an assessment of the fullness and fairness of the fiduciary's review, except for maybe discovery purposes, and decide, is she under the plan entitled to benefits, de novo? I think the court still has to be bound by the sorts of arguments and information that's contained in that pre-litigation appeal record. And the court made statements saying, the pre-litigation appeal record, as it came before me, there was nothing wrong with it, it was fine. Now, maybe I'm reading too much into the trial court's decision, and, of course, I'll defer to you in looking at that opinion as to how seriously you believe this court needs to address that second point that is an issue before you today. But we believe that there is some troubling language in the opinion about the extent to which what happened before Blue Cross was a full fair review. Counsel, normally we like to think that our opinions actually make a difference in the case. And you set up a scenario that frankly surprises me. You say if we were to find the trial court applied the wrong standard of review, then it must necessarily go to whether the hearing process was full and fair. Let's assume the hearing process was full and fair. Does it make a difference on the ultimate question in this case whether de novo review is used or not? And you have not argued to us that even under de novo review, your client has to win. And a possible outcome here is a possible outcome is even if it were de novo review, your client would not win and, therefore, a number of these other questions don't need to be reached. You haven't given us a piece of what I would think would be a logical argument. And then we would have to face the question of whether you've waived the issue. Your Honor, there are many cases, and I've litigated them, where I've had district court judges say the standard of review is the thing that determines whether you win or lose. If it was a de novo standard of review, you would win. But because it's not, because it's abuse of discretion, you lose. Now, the district court did not say, as I've seen some district courts say, it doesn't matter what the standard of review is. Whether it's abuse of discretion or de novo, the insurer wins. The defendant was reasonable and had substantial evidence, and, therefore, it doesn't matter. This is a significant opinion by the lower court because the lower court based its decision entirely on this abuse of discretion issue. The lower court did not say the standard of review doesn't matter or I would have made the same decision if it had been de novo. We assume, then, Your Honor, that if it had been de novo, it would have made a difference. All right. We'll go back and reread it. But you have to understand that courts of appeals, especially on summary judgment, may affirm the district court decision on any ground available in the record. Okay? Thank you. You are arguing that your client should be entitled to the benefits under a de novo review. Oh, certainly, Your Honor. Absolutely. No question. We're arguing whether, regardless of what the standard of review is, that the client should be entitled to the benefits. But we are arguing, Judge Cata, that if we get this court back under a de novo standard of review, the district court could say, well, now that the standard of review has changed, I find that you have established a basis to recover your benefits under a de novo standard of review, whereas you didn't have the ability to recover those benefits under abusive discretion. All right. Mr. Halperin. Good morning, Your Honor. My name is Joseph Halperin from Blue Cross Blue Shield. With me is Donald Savory of Blue Cross Blue Shield. Could you speak up, please? Thank you. Thank you. This case involves Blue Cross's denial of a claim for coverage of benefits for long-term mental health. On appeal, as I read the brief, as I read what was asked, I saw no request for a challenge to the decision that was made by Blue Cross. All that is said in the brief is that ask for a remand based on the standard of review. It would not be fair for this court to do what Mr. King has just suggested it do, which is go and decide the merits of the facts. There has been no basis presented to the court on which the court could rule in plaintiff's favor on this. Well, I'm not sure I understand that, Mr. Halperin. If indeed the standard is de novo review, and I know you don't concede that, and I'm not suggesting that's the proper standard, we're certainly equally able as the district court to do de novo review on an administrative record. So there are efficiency concerns that may make it appropriate for us simply to decide the case, particularly if the case is one that is relatively clear on the merits. Your Honor, I'm sorry. Go ahead. I would not argue that this court does not have the power to do what you just suggested. I just don't know that it would be entirely fair to the appellee in this case, presented with a brief that gave us no reason to argue the merits of the decision below. Well, I mean, you presumably are aware that we could affirm the district court's order on any basis made manifest by the record. You certainly, that would certainly be fair to you since you would win. All right? The brief does, the appellant's brief does suggest that on any standard of review, his client was entitled to win. Right. All right? So you were on notice of having to meet that argument. Right. So your argument about unfairness, frankly, puzzles me. Right. Well, to the extent that I'll limit what I'll say, to the extent that the court should choose to do what is being suggested here, All I would request is that the court read the briefs that were written below, which we would have repeated the essence of here. Your Honor had a question, sir? I'm just, I don't understand how you're reading the brief. You're reading it as them just having floated up an abstract question on standard of review, but not wanting us to reverse to decide under the right standard? No, I understood them to ask you to remand this to the district court so that the district court could decide on a de novo basis, which I think is incorrect, but that's what I understood them to ask. There are two issues of standard of review that are raised in the court here. One is the standard of review in this court. To the degree that Mr. King has raised the issue of a case stated, that's a confusion of the issue. What this court said in Toulouse is that a case submitted on a non-jury basis on a stipulated record is decided on the clear error standard. That's simply an application of Rule 52A. Yeah, but that was not an administrative law case. Isn't that correct? I thought Toulouse was, but I may have been mistaken. No, I think it was a non-jury trial, but not an ad law. I believe you're right. In any event, it doesn't matter, because what's going on is simply an application of Rule 52A. It's been long established that we're No, it's not an application of Rule 52A. It's an application of the Administrative Procedures Act and of ERISA's own appeal procedure. We have said that the rules of civil procedure are really awkward vehicles when they're applied to these administrative-type appeals and that our normal jurisprudence is inapplicable. Thus, the fact that this comes up on a motion for summary judgment, we don't apply conventional summary judgment standards. We don't take all the facts in favor of one side and against the other. We treat this on the basis of whether there's an error of law or is there substantial evidence in the record to support a decision. Is that decision arbitrary and capricious? Understood, Your Honor. All I'm trying to say is that the issue of a case stated, which is what Mr. King addresses in his reply brief, is irrelevant. That issue decides whether the We agree. So can you get to Yes, we can. The question of the level of appeal in this case depends essentially on the argument that the subscriber certificate in this case does not clearly state that Blue Cross has the authority to make decisions and decide what is covered, what is medically necessary, and what is reimbursable. No, that's not the correct question. Everyone agrees that the authority to decide the questions is spelled out in the subscriber certificate. The question is whether the authority to decide necessarily is the same as saying we've reserved discretion. The suggestion is made that our gross decision puts that argument in some jeopardy. I believe that this is simply semantics. The difference between we decide and we have discretion to decide is not a matter that has any meaningful significance in the world of the patient, in the world of the member, in the world of the doctor and the company. This is a legal prescription. The court has said several times, and all the circuit courts have said, there are no magic words that need to be recited. You do not have to say we have discretionary authority. No, but several circuits have said language similar to yours doesn't do it. I don't believe it is language similar to yours. Why can't Blue Cross Blue Shield magic language, notwithstanding, address those cases by a plain statement that we are reserving discretion, as we are entitled to do, rather than we have the authority to decide. Of course you have the authority to decide. What else does that convey? We have the authority to decide and to say what is appropriate for coverage. The subscriber certificate says throughout it how decisions will be made. To say we reserve discretionary authority to decide something is a language that courts understand. Yes, but Mr. Halpern, you've got our gross decision. But gross doesn't go to this kind of language, and that's not the issue in gross. The issue in gross is that the court couldn't, the subscriber couldn't tell what was being decided. All that was being decided was something about the form of proof. Gross is very clearly that if this had been clearly attached to discretion to decide eligibility, it might have been clear enough, but it wasn't. You were left guessing. Counsel, for like 25 years, courts have been saying left and right, if you include the word discretion, you're good to go. And gross said that, cases before. This circuit has actually suggested a safe harbor language. What do we do when after decades we have a company that's in this business that doesn't decide to mention discretion? It does include discretionary elements. It says, for example, that an individual consideration will be given to whether a claim should be paid or not. When Blue Cross judges it appropriate to do so, the difference between that and we reserve discretion, frankly, I don't think the average person out there in the street understands what I reserve discretion to do something means. Let's take it this way. Gross said benefits are payable when Sun Life receives satisfactory proof of claim, and proof of claim must be satisfactory to Sun Life. Doesn't say discretion, but pretty good, makes it clear it's going to be Sun Life and it's got to be satisfactory not in the abstract, but to Sun Life. They kind of had a pretty good argument like you're making. They lost. But Gross also says that. This seems to be short of that. You seem to be actually on the other side of Gross. I don't believe that is true, Your Honor. Well, why not? Because it says very clearly that Blue Cross, first of all, it says we interpret the language, we have the authority to interpret the language of the plan. It says you have to be medically necessary. What does medically necessary mean? Blue Cross will decide what medically necessary means. Blue Cross will decide who is eligible for coverage. Gross says that the satisfactory. If you want us to understand your points, just go a little slower. I know, but my time is running out, Your Honor. We'll give you more. When you say we reserve the authority to interpret the plan, what language are you pointing to there? The fact that Blue Cross has to interpret the words medically necessary. You only get benefits if they're medically necessary. And Blue Cross, it says Blue Cross decides what is medically necessary. That's interpreting the language of the plan. Just like Sun Life decides what's satisfactory. But Gross says that the satisfactory to language us is ambiguous as to what must be satisfactory, and the only discretion reserved is to determine, quote, form of proof. We don't know whether this is connected to eligibility. And I think the problem is what Judge Salyer pointed out. The plan here very clearly says who will make the decision about medically necessary, as you point out. It says Blue Cross will make the decision. But what's missing is it doesn't say that that decision is to be made in its discretion. It doesn't indicate that you're all of a sudden into this arbitrary and capricious world, and that's a huge difference for a beneficiary. It's only a huge difference in a court. It's not a huge difference in the real world. In the real world, to say Blue Cross decides and Blue Cross has discretion to decide won't mean anything to the average subscriber out there. It won't mean anything to the Division of Insurance. Plan costs more if you want to eliminate discretionary language, doesn't it? We don't have any plan that doesn't have this language, so I can't answer that question, Your Honor. It seems to me sort of abstract. The court, it seems to me that as a practical matter, it is perfectly clear to the subscriber in this case and in all of the Blue Cross cases who is going to decide what has to be done about it and what that implies. It says if Blue Cross decides that something isn't covered, you have to pay for the remainder of the charges. If that isn't discretion to decide eligibility for benefits, it isn't clear to me how you communicate it. We could put in the words discretionary authority. I believe the Division of Insurance would say we don't know what that means. Your subscribers don't know what it means. We understand courts like it, but it isn't in the real world as clear as we decide whether you get paid or not. Is there any evidence in this record that the regulators would not allow you to put in the language that this court has repeatedly said and other courts have repeatedly said would preserve discretionary authority? I didn't see any. No, of course not, Your Honor. I didn't mean to suggest there was. If it isn't clear enough in the subscriber certificate, it certainly is left without question in the premium account agreement where the language you ask for, the legalistic language appears in as explicit an exact form that you requested. It says that Blue House has discretionary authority. Its decisions cannot be overturned unless they are arbitrary and capricious. That language is in the premium account agreement. The premium account agreement and the subscriber certificate have been considered in conjunction in all four of the Blue Cross cases that came before the district court since 2007. It's the exact same language. Subscriber certificate says Blue Cross decides. The premium account agreement says it has discretionary authority. Suppose the premium account agreement said the deductible is actually twice as high as what it says in the plan. It's a planned document. The question would be is there notice of that given to the member. The answer is that discretion is given notice. I'm not sure I hear you. If the PBA said that the deductible is $50 and the plan said the deductible is $25, then wouldn't we hold as a matter of law that the deductible is $25, not $50? If there is a conflict between planned documents, yes, the rules say. The rights are set up in the plan. Right, but there's no conflict in this case between the rights set up. It's just spelled out in the legalistic language that this court seems to be suggesting might be more appropriate. There is no conflict. There is nothing to cancel out one or the other. The legalistic language is in the premium account agreement. Notice is given in the subscriber agreement. This is a certificate. I believe it's a subscriber certificate. Also says clearly in language that people of ordinary ilk can understand who decides what needs to be decided. And if one of your beneficiaries says they're really on their toes and they say send me a copy of the plan. To the extent that it's our insured account, we send it to the extent that it's a – But what you send is the subscriber agreement. Not if they ask for the – They ask for the plan. If they ask for the planned documents, we refer – No, they ask for the plan. We refer them to the plan administrator. We are not – They're going to send them the plan. They're not going to send them contracts that the plan administrator has entered into. The responsibility for complying with the ERISA requirements of sending documents is the plan administrators, not Blue Crosses in most cases. But Blue Cross knows the difference between a plan and a contract entered into by the plan fiduciary. Blue Cross understands, but these are all planned documents of one form or another, as Judge Szilja pointed out. They are deemed part of the plan and, therefore, part of what – Well, now, hold it. What authority says that a planned document like that is part of the plan? None of the ERISA regulations say that, do they? The ERISA regulations – well, in – Can you cite any authority that says the PPA is part of the plan? An ERISA plan is a group of contractual documents read together. This is what – the planned PAA is one of those contractual documents. As a group, they make the plan documents. I believe that's what Judge Szilja said earlier. I thought it made more sense – I'm not asking you what the planned documents are. Are you aware of any authority that says that contracts entered into by the plan administrator or the fiduciary are part of the plan? Yes, I believe we cited a number of them from – I can't – from the Denord case to the Hertzberg case to the other cases in the Seventh Circuit. We discussed there were a number of cases that said they have to be – an agreement is part of the plan – agreement like is part of the plan because it establishes the rights as between the parties. That's pretty clear. I know we have cited cases in our brief that say exactly that. Your Honors, I'm wavy on my time. Would you like me to continue? I'd be glad to. Would you like me to answer any questions before we end? No, thank you. Thank you very much. Three of the four cases that Blue Cross relies on in talking about whether the language of the subscriber certificate justifies abusive discretion standard overview have in the SPD, the summary plan description itself, language that refers to discretionary authority. They know how to spell this out. For whatever reason, they just failed to put it in the subscriber certificate we're dealing with in this case. So your point, Judge Kayette, is salient in the sense that they've had years to get this figured out. They have figured it out. For one reason or another, they just didn't put it in the subscriber certificate, and that makes a difference. Discretion isn't something that's just inherent, which is the argument that they're making. The need for notice is pervasive, clear, and necessary based on gross. With regard to the remedy that we seek, in the Baird case, that was a situation where this court found that there were significant procedural irregularities and problems with ERISA's claims procedure regulations, and the court said it doesn't matter whether the standard overview is de novo or abusive discretion because those problems with the claims procedure regulations are so significant, we're reversing. We're reversing right here and right now. We're giving the benefits to the claimant. When we look at that case, we think that there are some significant ways in which it relates to this, and it sheds light on this situation. But honestly, the Baird case has significant problems with the claims procedure process that just don't exist here. We think, as Baird itself says in the second to last paragraph of the case, that generally remand is an appropriate remedy when you're talking about claims procedure regulation problems. This court has the power to do either one, as you pointed out, Judge Celia, and certainly we would not have made the argument at all about full and fair review and the failure to engage in a meaningful dialogue unless we were asking this court to consider exercising its authority to say these claims procedure regulation violations are so significant, so problematic, that we think we're just going to reverse and award benefits right now. But we think that in light of case law saying that generally remand is the way to go, we talked about remand in the briefing. So that's what we have to say about the remedies. And unless the panel has other questions. I have one. We've put before you the possibility of our review of the summary judgment record to see whether this confusion over dispute over whether it is discretionary review or direct review makes a difference. Mr. Halpern was afraid that somehow the defendants would be accused of having waived defense because you did not raise that issue in your brief. He suggests that if the court were to pursue that issue, that we actually look at the filings in the district court as well as the filings up here. I would assume that you agree with that. Certainly you have that power, Your Honor. And if you choose to do that, that's certainly fine by us. Okay. Thank you. Thank you.